OPINION
Michael J. Wiley, a juvenile, admitted in the Greene County Juvenile Court to a charge of corrupting another with drugs, a felony of the first degree if committed by an adult. His plea was conditioned upon the court's making a final determination of the appropriate offense upon its receipt of a lab report as to the content of a substance which Wiley had placed in a coffee cup of one of his teachers at school. When the lab report was received and reflected that no controlled substances had been identified, the court adjudicated Wiley to be delinquent of attempted corrupting another with drugs, a felony of the second degree if committed by an adult. The court also determined that Wiley had believed the substance he placed in the teacher's coffee to be LSD. In due course, the matter came before the court for final disposition wherein Wiley was fined $250, assessed court costs of $75, ordered to make restitution for any out-of-pocket expenses incurred by the teacher in question, and was permanently committed to the Department of Youth Services for a minimum of one year, with credit to be given for time served in the Greene County Juvenile Detention facility and in a lock down facility at Pathways, a drug rehabilitation agency.
On appeal, Wiley advances five assignments of error, the first of which is as follows:
 1. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLATE (sic) WHEN THE COURT AFTER AN ADMISSION FAILED TO COMPLY WITH OHIO JUV.R. 29(D) BY FAILING TO ADVISE APPELLATE (sic) OF POSSIBLE MAXIMUM PENALTY THAT COULD RESULT FROM THE ADMISSION AND BY FAILING TO ADVISE APPELLATE (sic) THAT AN ADMISSION WOULD WAIVE APPELLANT'S RIGHT TO CHALLENGE THE STATE'S WITNESS, AND RIGHT TO CHALLENGE EVIDENCE CONCERING (sic) ALLEGED LSD, AS WELL AS HIS RIGHT TO REMAIN SILENT.
At the time Wiley entered his admission of delinquency by corrupting another with drugs, Wiley was with his retained counsel and his parents. The exchange from that proceeding which is germane to this assignment of error is as follows:
 MR. BRANNON (Defense counsel): I discussed this matter with the parents and the child — and the child in detail.
 Michael understands his rights I believe as I provided them to him — to him and to his parents. He understands the ramifications of what's been done. The parents, he and myself would like to thank the court and the state for reviewing the consideration.
 At this time he would like to admit his delinquency in this case and admit the facts that are contained in the complaint, only subject to a subsequent finding by the court as to whether or not the substance was or was not a contraband.
 We acknowledge that even if it was a contraband it would indicate a delinquency showing any further treatment and care.
 With that in mind, we would like to enter an admission to the charge of delinquency. We'll set forth the facts of the complaint contingent upon understanding it's neither the state's fault nor anyone else that the crime lab has still not provided that information.
 And we stand competent the court can make the appropriate determination and final entry in this case based upon the information received. Am I right?
MR. WILEY, JR.: Yeah.
MR. BRANNON: And you do admit?
MR. WILEY, JR.: Yes.
 JUDGE HUTCHESON: Okay. Michael, you've heard what Mr. Brannon has represented to the court on your behalf. Is this correct?
MR. WILEY, JR.: Yes.
 JUDGE HUTCHESON: All right. And you wish to enter an admission to the complaint with the understanding that — that the court will make a — a determination after the lab report has been submitted to the court?
MR. WILEY, JR.: Yes.
 JUDGE HUTCHESON: All right. And do you understand that if you are found to be delinquent, that the court will then make a disposition at some point in the future and possible disposition involves being assessed court costs, being assessed a fine up to $1,000, being continued under probation superbeing — probation supervision, having you placed in a foster home, group home or being committed to the Ohio Department of Youth Services for a minimum period of one year?
MR. WILEY, JR.: Yes.
 JUDGE HUTCHESON: All right. The court will accept the admission.
Juv.R. 29(D) provides as follows:
 Initial Procedure Upon Entry of an Admission. The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:
 (1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;
 (2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.
It is clear from the above quoted dialogue among the court, defense counsel, and Wiley that the court failed to properly address Wiley as required by Juv.R. 29(D). The court did not learn from Wiley that he understood the nature of the charge against him. The court also failed to fully apprise Wiley of the consequences of his admission, specifically that the period of commitment to the Ohio Department of Youth Services could be for as long as until Wiley reached his twenty-first birthday. See R.C. 2153.533(5). See Juv.R. 29(D)(1). Furthermore, the court made no effort to explain to Wiley the rights that he was waiving by entering his admission to the charge.
In fairness to the court, it would appear that it may have not advised Wiley of the rights that he was waiving because of the assurances of his retained counsel that Wiley had been advised by him of those rights and, inferentially, that Wiley understood them and waived them. Regardless of the court's good faith reliance upon the representations of trial counsel, we are nevertheless constrained to conclude that the trial court erred in failing completely to address Wiley pursuant to the requirements of Juv.R. 29(D)(2) and in not explaining to Wiley, pursuant to Juv.R. 29(D)(1), that the court had the power to commit him to the Ohio Youth Services until his twenty-first birthday.
Juvenile courts must substantially comply with the requirements of Juv.R. 29(D). The most important reason for requiring at least substantial compliance with the requirements of the rule is that it provides the court with the means of determining whether the admission is made knowingly and voluntarily. By substantially complying with the requirements of Juv.R. 29(D), the juvenile court necessarily creates a record from which a court of appeals can determine that there was a basis for the determination, if any, that an admission was voluntary and knowing. Of secondary importance is the fact that substantial compliance with Juv.R. 29(D) will discourage appellate challenges based on a failure to comply with Juv.R. 29(D) where the admission has, in fact, been knowingly and voluntary.
Notwithstanding that the court's colloquy with Wiley left much to be desired, we nevertheless conclude that these deficiencies were neither prejudicial error nor plain error. With one judge dissenting, this court overruled a similar assignment of error based upon a dialogue between the juvenile court's referee and the accused juvenile which was even more spare than the one before us in this case. In re Harris (1995), 104 Ohio App.3d 324. We concluded that despite the deficiencies, the juvenile had been provided due process in the proceedings. Here, we likewise conclude that Wiley was provided due process. We find it unlikely on this record that Wiley made an unknowing, involuntary admission. First, Wiley had admitted the offense in a written statement he made early in the investigation. Second, it is readily inferable from his counsel's statements that Wiley indeed did know the rights he was giving up. Third, in a "waiver of summons" filed May 8, 1997, almost seven weeks before making his admission on June 18, 1997, Wiley had acknowledged understanding that he had all of the rights set forth in Juv.R. 29(D)(2). Finally, the court went far to apprise Wiley of the potential consequences of his admission even if it did not mention the full extent of potential confinement at Ohio Youth Services. In overruling this assignment of error, we acknowledge that our review has not been as rigid as our review of plea proceedings pursuant to Crim.R. 11 or of other appellate districts of admissions in juvenile proceedings. See In re Flynn (1995),101 Ohio App.3d 778.
The first assignment of error is overruled.
 2. THE TRIAL COURT ERRED BECAUSE THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO ACT IN THE BEST INTEREST OF THE APPELLATE (sic) BY ORDERING PERMANENT COMMITMENT TO THE OHIO DEPARTMENT OF YOUTH SERVICE WHEN MORE APPROPRIATE OPTIONS WERE AVAILABLE.
In this assignment of error, Wiley contends that the court abused its discretion in ordering confinement at Ohio Youth Services. He claims the court was less interested in an appropriate disposition, based on psychological evaluations prepared prior to disposition, than in grandstanding for the benefit of the press. Before announcing its disposition, the trial court spoke at some length as follows:
 Juvenile courts are obligated to seek the rehabilitation of juveniles and children.
 They also have an obligation for community safety and there is always a debate, there is always a struggle over the balance of community safety versus rehabilitation.
 That's something of great debate these days in our society about the juvenile justice system and something that this court wrestles with virtually every day in every case and this case is no different.
 Michael Wiley does come from a good family with two very concerned, solid parents and that's something in his favor.
 This count cannot consider this offense in a vacuum. And the — the background of Michael, his family, his — his school, his community activities had to be considered when the court makes a disposition. We just can't look at this singular offense and decide what's going to happen with Michael.
 He was defiant at home. He disregarded rules. His mother and his father, when he was around, would attempt to hold him accountable and have — have him face consequences and Michael essentially ignored that.
 The same thing happened at school. He had a number of school violations. He got disciplined there. And some of the school violations continued.
 He ended up in the court system through violations of the law, essential — initially informally and through in fact the insistence of his parents, additional charges were filed against him including the one that ended up causing Michael to be placed in the probation supervision of Mr. Rice, a relatively minor offense.
 Nevertheless, the court at that point was ready to give Michael treatment and counseling and keep him in this community and work with him through probation so that he would turn around his behavior at home and his behavior at school, all of which was going downhill.
 Now we have this particular offense which is very serious for a couple of reasons. Number one, it exposed Mr. West to significant physical harm or risk of physical harm.
 Number two, it was a statement or a challenge to what should be a safe environment in the school system.
 And all that comes on the heels of a continuing pattern of defiance of home rules, school rules and the law.
 School staff and parents and students deserve to have a safe school environment. When that expectation of safety is seriously undermined by such an act as Michael committed, there needs to be a consequence that is appropriate.
 So what is appropriate for Michael? Again, I cannot take the — the — this particular incident in a vacuum and make a decision. I have to look at the entire picture.
 This court does feel rehabilitation is — is important and that is exactly why this court permitted him to go into Pathways while this case was pending rather than just sit upstairs in our detention facility, so he would get intensive treatment.
 And Pathways is a good program. They have a good staff and they do a good job. But with all due respect to Pathways, this — the Pathways does not have the concern or responsibility of community safety that this court does.
 If our school system and our environment at school is such that the students and the teachers and the parents focus more on is it safe there, will my son drink something that's going to harm him, will — will my school staff get hurt because somebody has spiked the — a coffee cup or put something in our — in our food or whatever else and we get away from focusing on — on academics and teaching and socialization, then we're in trouble.
 If Michael came into this court with only this offense on his record, there might be a different outcome today for him.
 However, Michael comes into this court with a pattern of rejecting authority, rejecting parents, rejecting school officials and disregarding the law. On the day he was to meet with Mr. Rice and go over the rules of probation, he committed this act.
 It's this court's judgment that Michael Wiley shall be committed to the Ohio Department of Youth Services by statute. That commitment period is a minimum of one year.
 By law, Michael is entitled to credit for any time he spent in detention. In addition, this court is going to give him credit for the time he spent in Pathways because he was in a lock down facility.
 And under the definition of detention, a private facility designed to restrict the movement of juveniles is considered detention. So he'll be given credit for the time he's been in detention and at Pathways.
Wiley does not contend that this disposition was beyond the authority of the court to impose. We have ordered and made a part of the record the psychological reports upon which the court relied in making the disposition that it did. All of the background information referred to by the court is well documented in all of the psychological reports. It is clear that Wiley had been in trouble at home, at school, and in the community in the past, and that more lenient measures had had little influence upon his behavior. The juvenile court apparently concluded that sterner measures were necessary to get Wiley's attention if he were to straighten out. While Wiley and his parents may have preferred a more lenient disposition, we certainly find no abuse of discretion in that chosen by the trial court.
The second assignment of error is overruled.
 3. THE TRIAL COURT ERRED BECAUSE THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO HOLD A HEARING TO DETERMINE WHETHER DEFENDANT/APPELLANT WAS ELIGIBLE FOR TREATMENT IN LIEU OF CONVICTION.
Under this assignment of error, Wiley contends that the trial court erred in refusing to consider his request for treatment in lieu of conviction pursuant to R.C. 2951.04(1).
The juvenile court determined that treatment in lieu of conviction is not available to juvenile offenders but only to adult offenders.
From a perusal of the language of R.C. 2951.04(1), we are inclined to agree with the juvenile court that treatment in lieu of conviction is not available to juvenile offenders. Furthermore, even if treatment in lieu of conviction were available to juvenile offenders, Wiley would not have been eligible for this dispositional alternative because he was charged with a violation of R.C. 2925.02 and as such was expressly exempted from consideration for treatment in lieu of conviction. See R.C.2951.04(1)(B)(5).
This assignment of error is overruled.
 4. THE TRIAL COURT ERRED BECAUSE THE APPELLANT WAS FORCED INTO ENTERING A PREMATURE ADMISSION IN EXCHANGE FOR THE PROSECUTION'S WITHDRAW OF THE 30(B) MOTION.
On May 15, Wiley filed the motion for treatment in lieu of conviction discussed in the third assignment of error. On May 19, 1997, the state of Ohio moved the juvenile court to relinquish its jurisdiction over Wiley and to transfer the case to the Court of Common Pleas for criminal prosecution of Wiley as an adult. Wiley claims that he was forced to admit to the charges in juvenile court in order to avoid transfer of his case for criminal prosecution as an adult.
The record fails to reflect that Wiley was forced to make an admission to the charge in juvenile court to avoid transfer of his case for criminal prosecution as an adult. The record reflects that three psychological reports were prepared to determine whether the transfer for criminal prosecution should occur, and the three reports all concluded that Wiley was amenable to treatment in the juvenile system. The State withdrew its motion that the juvenile court relinquish jurisdiction, and thereafter Wiley entered the admission discussed above. The record fails to disclose that Wiley was under any compulsion by the court or State to do anything.
The fourth assignment of error is overruled.
 5. THE TRIAL COURT ERRED BECAUSE APPELLANT WAS ADJUDICATED UNDER THE WRONG STATUTE AS THE LAW CLEARLY PROVIDES FOR A COUNTERFEIT DRUG OFFENSE IN SUCH CIRCUMSTANCES.
Under this assignment of error, Wiley contends that the court should have found him delinquent by virtue of having trafficked in counterfeit controlled substances as proscribed in R.C.2925.37(B): "No person shall knowingly make, sell, offer to sell, or deliver any substance that he knows is a counterfeit controlled substance." This offense is a fourth degree felony, whereas attempted corrupting another with drugs, which Wiley was found to have committed, is a second degree felony. See R.C. 2923.02(E).
As mentioned above, Wiley admitted the charge subject to a lab report as to the content of the substance which Wiley surreptitiously had placed in his teacher's coffee. When the lab report reflected that no controlled substances were identified in the material submitted to the laboratory, the court adjudicated Wiley delinquent of attempted corrupting another with drugs rather than the original charged offense of corrupting another with drugs.
We disagree with Wiley's contention that the State should have suggested and/or the court should have determined that Wiley was, in fact, guilty of trafficking in counterfeit controlled substances in violation of R.C. 2925.37(B).
At a preliminary hearing on the State's motion that the juvenile court relinquish jurisdiction, held May 21, 1997, counsel for the State and for Wiley stipulated the police report as evidence. It is clear from Wiley's own written statement, which is part of the police investigation, as well as from other aspects of the investigation, that when Wiley placed the substance in his teacher's coffee, it was his belief that he was placing LSD in the teacher's coffee. Indeed, the teacher himself reported that he felt disoriented after drinking the coffee. While the lab report of the material submitted to it indicated that no controlled substances were identified, this does not necessarily establish that the substance placed in the coffee was not LSD.
An essential element of trafficking in counterfeit controlled substances pursuant to R.C. 2925.37(B) is that the offender must know that the substance in question is counterfeit. Here, all of the information contained in the stipulated police report was to the effect that Wiley did not know that the substance he placed in the teacher's coffee was counterfeit. Indeed, he thought it was genuine LSD. R.C. 2923.02 provides in pertinent part as follows:
 (A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense.
 (B) It is no defense to a charge under this section that, in retrospect, commission of the offense which was the object of the attempt was either factually or legally impossible under the attendant circumstances, if that offense could have been committed had the attendant circumstances been as the actor believed them to be.
These provisions are dispositive of this assignment of error. Having admitted conditionally to a charge of corrupting another with drugs, the evidence certainly established that Wiley attempted to do so. It was not a defense to the charge of attempted corrupting another with drugs that it may have been factually impossible for Wiley to have accomplished his criminal object.
The assignment of error is overruled.
The judgment will be affirmed.
YOUNG, P.J. and FAIN, J., concur.
Copies mailed to:
Robert K. Hendrix
Dwight D. Brannon
Hon. Robert W. Hutcheson